RENDERED:  SEPTEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0077-MR

DANIEL ARENAS                                                        APPELLANT


v.                    APPEAL FROM KENTON CIRCUIT COURT
                      HONORABLE KATHLEEN LAPE, JUDGE
                      ACTION NO. 18-CR-01720


COMMONWEALTH OF KENTUCKY                                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; MAZE AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Daniel Alexander Arenas appeals from a jury verdict

finding him guilty of five counts of possession or viewing of matter portraying a

sexual performance by a minor.  Arenas appeals the denial of his motion to

suppress the material found on his cell phone for failure to seize it through a

warrant and the delay in obtaining a warrant afterwards.  He also appeals the denial

of his motion for a directed verdict on the basis that the Commonwealth could not

prove he viewed child pornography on specific websites based on what was later found on them.  We affirm.

The underlying material facts are uncontested.  Arenas's girlfriend saw Arenas looking at something on the internet on his phone and, being suspicious, went through his browser history after he had fallen asleep.  She discovered searches for child pornography and links to websites.[1]  When she visited those websites, she saw images of prepubescent females wearing lingerie, some of whose genitals were visible.  She took photos with her phone's camera of the search history she found on Arenas's phone.

In later text messages Arenas's girlfriend exchanged with Arenas, she accused him "look[ing] at child porn[.]"  She expressed her disgust that he "typed in specific stuff like 'preteen girls in panties'" and expressed worry that if she let him stay in her life, he might touch one of her own children one day.

_____

[1] The screenshots of Arenas's phone browser history included searches for "illegal cp" and "LOLICON AND CP."  The websites Arenas clicked on included several related to preteen girls in panties before veering off to more explicitly titled websites which included the phrases "Home Secret XXX," "Youngest Lolas – Young teen xxx porn," "Fresh Teen Porn," and "Welcome to LOLITA-TIME."  Additional deleted search terms were recovered by the computer forensic analysis; Detective Fain testified that deleted search terms which were repeatedly used included "c*mshot snapchat 14 old," "c*mshot snapchat underage," "c*mshot snapchat young," "c*mshot selfies and schoolgirls with fat asses" and "cp loli videos."  Detective Fain testified that some of the URLs visited by Arenas included "girlsfirstf***gdn," "younggirlssexaaction," "preteensexactioncollection," and "hotgirlscollectionnakedgirlsyoung." "CP" is an abbreviation for "child porn."  "Loli," "Lola" and "Lolita" are terms associated with child pornography (as originally derived from the novel *Lolita* by Vladamir Nabokov which is told from the perspective of a sexual predator who molests his young stepdaughter and tries to justify his actions).

While Arenas denied that he would ever hurt a child, he did not deny looking at child pornography, stating "it made me feel gross and disgusting it definitely isn't something that I like or [I] view as good at all" justifying "I really don't know why I did it but I know that I didn't think it was good[.]  I definitely viewed it as disgusting[.]"

When Arenas's girlfriend asked "[w]hy would you Google little girls in lingerie[?]" he responded, "I know you don't understand this but it was just the wrongness of it[,]" justified that it came up in "yahoo top searches when you type in preteen[,]" and explained again "I know it's f***ed up and I feel like a disgusting horrible worthless person but I would never hurt a kid[.]"

About a month later, Arenas's girlfriend showed the police the images she had taken of Arenas's search history and their text exchange.  The case was assigned to Detective Fain, who scheduled an interview with Arenas.  However, on the day of the interview an attorney left a message for Detective Fain and, though he could not recall if the message explicitly said so, Detective Fain no longer expected Arenas to attend the interview.  Thus, Detective Fain decided to seize Arenas's cell phone because of worries it could be wiped clean.  Detective Fain went to Arenas's residence before seeking a warrant.  Arenas came outside at the detective's request and identified himself.  Detective Fain then asked Arenas if he had a cell phone and Arenas responded in the affirmative.  Arenas pulled the

phone from his pocket at Detective Fain's request, whereupon Detective Fain seized the phone.

Detective Fain did not search the phone immediately. Instead, he requested, and received, a search warrant for the phone roughly two weeks after seizing it. A forensic examination of the phone revealed internet searches containing terms which made it plain Arenas had searched for child pornography, though no suspected child pornography was found on the phone.

Detective Fain clicked on the links for the sites which had been previously visited by Arenas.[2] Some sites no longer worked and some contained adult pornography. However, some sites contained what Detective Fain believed to be child pornography. Detective Fain printed the contents of what he initially saw on each page when visiting six websites, rather than clicking on any links contained therein. However, Detective Fain's search occurred many weeks after Arenas had visited those websites. Thus, given the ever-evolving nature of the internet,[3] Detective Fain admittedly could not know that what he viewed on the sites was what Arenas had viewed. Arenas was indicted in December 2018 on six

---

[2] Arenas does not argue that he was not the person who conducted the searches on his phone.

[3] As the United States District Court for the Western District of Kentucky has remarked, albeit in a far different context, "[w]ebsites are frequently, if not constantly, updated. Methods of access to portions of the website can change on a regular basis and links to previous posts on a website are constantly added and taken away from sites." *Salyer v. Southern Poverty Law Center, Inc.*, 701 F. Supp. 2d 912, 918 (W.D. Ky. 2009).

counts of possession or viewing of matter portraying a sexual performance by a minor, a class D felony.

In February 2019, Arenas filed a motion to suppress evidence resulting from the warrantless seizure of his phone. After holding a hearing in March 2019, the circuit court denied the motion. The charges against Arenas then proceeded to an August 2019 jury trial.

At trial, Arenas's former girlfriend testified and screenshots of Arenas's search history and their text exchange were admitted into evidence. The person who conducted the forensic examination of the phone also testified about how he recovered deleted search terms from the phone. Detective Fain also testified and submitted the printouts he had obtained from the initial page of each website he visited (which he believed constituted child pornography); these printouts were admitted into evidence.

The trial court denied Arenas's motion for a directed verdict on five charges but granted a directed verdict on one charge since the printouts from that website did not show nude minors. Instead it showed young girls who were wearing makeup and clothed in tank tops and shorts, swimsuits, and pageant-wear. That website contained a list of links whose titles appeared to indicate that they contained explicit material relating to children.

The remaining printouts displayed thumbnail galleries of various sexual photographs. The thumbnail photographs were of sufficient size and clarity to allow a visitor to easily view their contents and were displayed in either long columns or grids. These thumbnail photographs represented videos which could be accessed by clicking on them. While not every thumbnail photograph depicted an actual sexual performance by a minor person,[4] on each website there was a plethora of thumbnail photographs which depicted nude prepubescent children or young teens, with some of those photographs depicting graphic in-progress sexual acts. Each of the five website pages had dozens of thumbnail photographs which appeared to depict actual sexual performances by minor persons.

Arenas obtained, over the Commonwealth's objection, an instruction for attempted viewing of child pornography as a lesser included offense, as supported by the evidence. In closing argument, Arenas's counsel argued that it would be appropriate for the jury to convict Arenas on the lesser included offenses. Specifically, counsel said he "would be a fool to stand in front of you and tell you that Daniel Arenas didn't attempt, by his searches, to, to access child pornography . . . . I can't do that. I know better. You know better. What we

---

[4] Some of the photographs appeared to depict sexual activities between adults, other images might have questionably been of young-looking adults, still other photographs were "zoomed in" to such an extent that it was not evident if one party was a minor.

don't know is if he actually succeeded or not. You're not presented with any evidence about that."

The jury found Arenas guilty of five counts of possession or viewing of matter portraying a sexual performance by a minor, thereby implicitly rejecting counsel's invitation to find Arenas only guilty of attempted viewing of those matters. Consistent with the jury's recommendation, the trial court sentenced Arenas to a total of ten years' imprisonment (two years on each count, to be served consecutively). Arenas then filed this appeal.

Arenas first argues that the trial court erred by denying his motion to suppress. "Our standard of review of the trial court's denial of a suppression motion is twofold. First, the trial court's findings of fact are conclusive if they are supported by substantial evidence; and second, the trial court's legal conclusions are reviewed de novo." *Milam v. Commonwealth*, 483 S.W.3d 347, 349 (Ky. 2015). The relevant material facts are not disputed. Thus, we focus on a *de novo* review of the trial court's legal conclusions.

Arenas contends Detective Fain improperly seized Arenas's cell phone. Generally, "a seizure works a lesser invasion of privacy than a search." *Hedgepath v. Commonwealth*, 441 S.W.3d 119, 128 (Ky. 2014). This is because "[a] seizure affects only the person's possessory interests; a search affects a person's privacy interests." *Segura v. United States*, 468 U.S. 796, 806, 104 S.Ct.

3380, 3386, 82 L.Ed.2d 599 (1984). Consequently, a warrant is generally required to search the contents of a cell phone. *Riley v. California*, 573 U.S. 373, 401, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) ("[o]ur holding, of course, is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest."); *Tucker v. Commonwealth*, 611 S.W.3d 297, 299 (Ky.App. 2020) ("[a]ccordingly, a search warrant is generally required before an officer can search the data contained within a person's cell phone[.]").

The question under these facts is twofold: Did Detective Fain permissibly seize the cell phone? If not, then the trial court should have granted the motion to suppress. If so, was the roughly two-week post-seizure delay in seeking a search warrant unreasonable?

The parties have not cited, nor have we independently located, published Kentucky authority involving similar facts. However, there is unpublished Kentucky precedent, as well as extraterritorial precedent, which generally tends to undercut Arenas's arguments.

In *Taylor v. Commonwealth*, No. 2014-SC-000703-MR, 2016 WL 2605296 (Ky. May 5. 2016) (unpublished),[5] the police received consent to search a

---

[5] We discuss *Taylor* here pursuant to Kentucky Rule of Civil Procedure (CR) 76.28(4)(c) as there appears to be "no published opinion that would adequately address the issue before the court."

residence for a video camera allegedly used to record sexually explicit images of children. The police did not find a video camera but seized other electronic items "onto which the photographs or video recordings could have been transferred[,]" such as computers and cell phones. *Id.* at *1. Taylor declined the police's request to search his computer, so the police obtained a search warrant before conducting a forensic examination, which revealed the computer contained sexually explicit photos of a minor. Taylor filed a motion to suppress, arguing the seizure was improper. The trial court denied the motion, after which Taylor entered a conditional guilty plea.

On appeal, Taylor argued the motion to suppress should have been granted, but our Supreme Court disagreed, holding in relevant part:

> A seizure of property occurs when there is some meaningful interference with an individual's possessory interest in that property. As a seizure affects only a person's possessory interests, it is generally considered less intrusive than a search which affects a person's privacy interests.
>
> In recognition of this, the United States Supreme Court has interpreted the Fourth Amendment to permit seizure of property, pending issuance of a warrant to examine its contents, if law enforcement authorities have probable cause to believe that the container holds contraband or evidence of a crime. Additionally, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.

In the case at bar, the police were permitted to seize Taylor's computer as they had probable cause to do so. Melissa informed Officer Willis about Taylor's sexual abuse. Her account was supported by Charlotte's statement to the police that Melissa had previously informed her about the abuse. Additionally, when Taylor was interviewed by the police he admitted to owning a video camera and that it was located inside the residence. While the police were unable to recover the camera during their search, they did locate electronic devices (including Taylor's computer) onto which Taylor could have transferred the photographs and videos.

Based on the statements of Melissa and Charlotte there was probable cause for the police to believe that the computer contained evidence of a crime. As such, the police temporarily seized the computer to examine it a later date and to avoid the destruction of evidence. The temporary seizure of Taylor's computer, while the police obtained a warrant to search it, did not meaningfully interfere with his possessory interests. *See United States v. Mitchell,* 565 F.3d 1347, 1350 (11th Cir. 2009) (seizure of a computer "to ensure that the hard drive was not tampered with before a warrant was obtained" did not violate the Fourth Amendment). As such, the circuit court properly rejected Taylor's argument that the computer was improperly seized.

*Id.* at *3-4 (internal quotation marks and some citations omitted).

The same fundamental conclusion is appropriate here. Arenas's girlfriend saw pictures of prepubescent females on Arenas's phone, some of whose genitals were visible. Arenas's girlfriend also took photos of the search terms Arenas had used on his phone, and some of those searches were unmistakably efforts to retrieve child pornography. Moreover, Arenas's girlfriend took

-10-

screenshots of text exchanges she had with Arenas, in which he essentially admitted having looked for child pornography due to being lured by the "wrongness" of it. The police thus had probable cause to believe that Arenas's cell phone contained evidence of criminal wrongdoing by Arenas. It is beyond serious debate that the information on a phone can be deleted (wiped) quickly and easily, and a phone can also easily be concealed or destroyed, thereby heightening the need to obtain possession of the phone quickly.

Arenas stresses what Detective Fain did not know at the time of the seizure. For example, Detective Fain forthrightly admitted that he did not know that the phone he seized was the same phone whose contents Arenas's girlfriend had viewed. But Detective Fain knew the phone seen by the girlfriend was an iPhone and the phone Detective Fain seized was an iPhone.

Probable cause only requires "a fair probability that . . . evidence of a crime will be found in a particular place" rather than "certainty that . . . evidence will be present in the place to be searched." *Moore v. Commonwealth*, 159 S.W.3d 325, 329 (Ky. 2005). The fact that Detective Fain did not know for sure that the phone he seized was the same phone Arenas's girlfriend had viewed does not defeat the conclusion–based on the totality of the circumstances–that there was probable cause to believe that the phone Arenas removed from his pocket which was seized by Detective Fain contained evidence of criminal activity. Similarly,

-11-

Arenas's closely related argument that it was not immediately apparent that the phone seized by Detective Fain was incriminating fails because Detective Fain possessed probable cause that the phone Arenas had on his person contained evidence of criminal activity.

Finally, Arenas offers a two-sentence argument, which contains no citations to authority or the record, that Detective Fain should not have met with Arenas personally without first discussing the matter with Arenas's counsel. The entirety of Arenas's fatally fleeting argument is: "Det. Fain was aware that Daniel was represented by an attorney and therefore all requests should have gone through the attorney. Det. Fain should not have even [gone] to question Daniel about having a phone." Appellant raises the same basic argument, again tersely and with no citation to authority, in his reply brief.

Arenas's conclusory argument, devoid of citation to supporting authority, is wholly insufficient to merit appellate relief. *See, e.g.*, *Harris v. Commonwealth*, 384 S.W.3d 117, 131 (Ky. 2012); *Koester v. Koester*, 569 S.W.3d 412, 414 (Ky.App. 2019). Even if we examined the matter on the merits, we would not conclude that the fact that an attorney left some sort of message on Detective Fain's phone (the exact contents of which Arenas has not shown by, for example, calling the attorney as a witness or at least providing an affidavit from the attorney detailing the nature of the message left for Detective Fain) completely

insulated Arenas from being contacted at all by Detective Fain. Perhaps, arguably, Detective Fain should have explored the matter with Arenas's counsel before going to Arenas's residence, but Arenas has not cited any authority which *required* such a pre-seizure consultation. Detective Fain's lack of consultation with Arenas's attorney does not change the fact that there was probable cause to believe Arenas's phone contained evidence of criminality which could have easily been destroyed.

Having determined that probable cause existed for the seizure, we now address Detective Fain's roughly two-week post-seizure delay in seeking a search warrant. Again, Arenas's argument is fatally underdeveloped and belated. The matter is not addressed in his opening brief, Arenas does not cite to where he raised the "impermissible delay" argument before the trial court, and his reply brief only tersely asserts that "Det. Fain did not apply for a search warrant for over two weeks because he had some other cases he was working on as well" so "this court should find that no effort was made to obtain a warrant within a reasonable amount of time and suppress the evidence."

We agree with the standard stated by another panel of our Court in *Iredale v. Commonwealth*, No. 2016-CA-001513-MR, 2018 WL 6721334, at *3 (Ky.App. Dec. 21, 2018) (unpublished), which involved the warrantless seizure of a cell phone "that a [post-seizure] search warrant should be obtained within a reasonable period of time[.]" In determining that a two-month post-seizure delay

in seeking a search warrant was not so unreasonable as to invalidate the seizure under the particular facts of that case, it relied on and quoted extensively from *United States v. Burgard*, 675 F.3d 1029, 1032-34 (7th Cir. 2012), which focused on the importance of the infringement on the person's possessory interest, the brevity of the seizure, the strength of the state's basis for seizing the item, whether there was reasonable suspicion or probable cause for the seizure, and the diligence with which the police acted.

The question is not whether Detective Fain ideally should have sought a search warrant sooner. We agree that given their ubiquitous status and importance, the deprivation of cell phones should be, ideally, minimized to the greatest extent possible. *See, e.g.*, *United States v. Wilkins*, No. CR-19-390 (RC), 2021 WL 1894990, at \*24 (D.D.C. 2021) ("[a]n individual's property interest in their own cell phone can generally be assumed to be significant."). Instead, we must determine whether Detective Fain's delay was so unreasonable as to destroy the validity of an otherwise permissible seizure. "There is unfortunately no bright line past which a delay becomes unreasonable." *Burgard*, 675 F.3d at 1033. However, "[a]ll else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures[,]" which is the situation here. *Id.*

We begin by acknowledging that Detective Fain did not offer a compelling reason for the delay in seeking a warrant (sickness, serious injury, etc.).

-14-

Most police officers do not have the luxury of having been assigned only one case at a time, so having other cases to attend to, by itself, is not inherently sufficient to always excuse all delays in seeking a warrant. The warrant application was short and thus should not have taken a great deal of time to complete. But we cannot conclude that, by itself, the roughly two-week delay here was unreasonable given the strength of the Commonwealth's basis for seizing the phone as *many* courts across the United States have found lengthier delays in obtaining a warrant to not be unreasonable.[6] The twenty-one-day delay in obtaining a warrant to search a seized computer found unreasonable in *Mitchell*, which Arenas cites, was roughly a week longer than the one at hand and decided upon the specific facts in that case. Arenas has failed to cite to any cases containing a similar length of delay in obtaining a search warrant to what occurred for his phone, which was held to be unreasonable or to explain under the particular facts of his case why this

---

[6] We do not intend the following list to be exhaustive and acknowledge that each case has its own unique, potentially distinguishable facts and arguments. Nonetheless, the following opinions are examples of courts concluding that delays in seeking a warrant longer than the roughly two-week delay here were not unreasonable: *United States v. Vallimont*, 378 F. App'x 972, 975-76 (11th Cir. 2010) (forty-five-day delay); *United States v. Brantley*, No. 1:17-CR-77-WSD, 2017 WL 5988833, at *3 (N.D. Ga. Dec. 4, 2017) (unpublished) (sixteen-day-delay deemed "relatively short" and not unreasonable); *United States v. Todd*, No. CR 416-305, 2017 WL 1197849, at *12 (S.D. Ga. Feb. 10, 2017) (unpublished) (twenty-eight-day delay); *United States v. Blanchard*, No. CV 19-CR-10298-RWZ-1, 2021 WL 2458200, at *4 (D. Mass. Jun. 16, 2021) (unpublished) (four-month delay "longer than was necessary" but "not unreasonable."); *United States v. Howe*, 545 F. App'x 64, 65-66 (2d Cir. 2013) (thirteen-month delay); *United States v. Camp*, No. 5:11-CR-155-BO, 2012 WL 148690, at *2 (E.D.N.C. Jan. 18, 2012) (unpublished) (nineteen-day-delay); *United States v. Lowe*, No. CRIM.A. H-10-813-2, 2011 WL 1831593, at *2-3 (S.D. Tex. May 12, 2011) (unpublished) (twenty-one-day delay).

-15-

delay was intolerable here. On these facts, we cannot conclude the two-week delay here was unreasonable (though we, of course, are not issuing a *per se* ruling that a fourteen-day-delay is always reasonable).

We now turn to determining whether Arenas was entitled to a directed verdict.[7] Under familiar Kentucky precedent:

> The legal standards for a directed verdict motion are clear: "[i]f under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal." *Trowel v. Commonwealth*, 550 S.W.2d 530, 533 (Ky. 1977). "The trial court must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion, and a directed verdict should not be given unless the evidence is insufficient to sustain a conviction. The evidence presented must be accepted as true. The credibility and the weight to be given the testimony are questions for the jury exclusively." *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983). The standard for appellate review is equally clear: "[o]n appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

*Eversole v. Commonwealth*, 600 S.W.3d 209, 217-18 (Ky. 2020).

Arenas was found guilty of five counts of possessing or viewing matters portraying sexual performances by minors. The statute governing that

---

[7] Arenas filed a motion *in limine* during trial to argue the charges should be dismissed but his argument here is focused on the denial of his motion for directed verdict.

-16-

offense, Kentucky Revised Statutes (KRS) 531.335, provides in relevant part as follows:

> (1) A person is guilty of possession or viewing of matter portraying a sexual performance by a minor when, having knowledge of its content, character, and that the sexual performance is by a minor, he or she:
>
> > (a) Knowingly has in his or her possession or control any matter which visually depicts an actual sexual performance by a minor person; or
> >
> > (b) Intentionally views any matter which visually depicts an actual sexual performance by a minor person.
>
> (2) The provisions of subsection (1)(b) of this section:
>
> > (a) Shall only apply to the deliberate, purposeful, and voluntary viewing of matter depicting sexual conduct by a minor person and not to the accidental or inadvertent viewing of such matter[.]

The Commonwealth proceeded under the theory that Arenas viewed, not possessed, matters portraying sexual performances by minors. The dispute here is whether the jury could properly convict Arenas based on him viewing the depiction of "an actual sexual performance by a minor" on each of the five websites.

In fact, there was no proof as to exactly what Arenas viewed when he visited the five websites underlying the five relevant counts of the indictment. Arenas's argument is that he cannot be found guilty of viewing child pornography

-17-

without the Commonwealth presenting proof of what he specifically viewed; he asserts that it was mere suspicion or conjecture that there was child pornography on those websites when he viewed them. The Commonwealth argues that a reasonable juror could infer that Arenas viewed child pornography from the totality of the evidence.

In most cases involving similar charges, the defendant downloaded child pornography to his or her electronic device, or the authorities discovered the pornography in the trash or cache of the defendant's electronic device. But there is no indication that any child pornography was found on Arenas's phone, so those cases are materially distinguishable. Indeed, the parties have not cited, nor have we independently located, any opinions from Kentucky or elsewhere addressing this same argument under similar facts.

To be properly found guilty, the evidence had to support a conclusion beyond a reasonable doubt that Arenas intentionally viewed matters portraying minors engaging in a sexual performance. Arenas stresses that no evidence showed what he actually viewed on the websites in question. We agree that there was no such direct evidence. But we disagree that Arenas was entitled to a directed verdict because, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences in its favor, there was

sufficient evidence for a reasonable juror to infer that Arenas viewed child pornography.

Our Supreme Court rejected a similar argument in *Crabtree v. Commonwealth*, 455 S.W.3d 390 (Ky. 2014). In *Crabtree*, the Court considered "whether there is evidence to support a finding that Crabtree was aware of the nature of the material in the [partially downloaded video] files [of child pornography] on his computer" where there was "no proof that Crabtree watched the videos that serve[d] as the bases of the charges for which he was convicted[.]" *Id.* at 398. The Court held that circumstantial evidence, including Crabtree's admission that he had watched a child pornography video (though that was not among the videos underlying his criminal charges), was sufficient to deny the directed verdict motion. *Id.* at 398-402. In reaching this conclusion, the Court noted that the file names "were obviously indicative of child pornography" and that "[n]o person with an understanding of English would have seen these video titles and believed they contained anything other than child pornography." *Id.* at 402.

The same can be said regarding the internet searches and the titles of the websites which Arenas decided to visit. While *Crabtree* was about possession, in each situation the defendant acted knowingly, Crabtree by downloading videos whose titles were indicative of child pornography and Arenas by conducting

internet searches with terms associated with child pornography and then clicking on websites whose titles were indicative of child pornography and explained what was to be found within. This is a far different situation than the one in which someone may click on an ambiguously titled website sent by email or click on what turns out to be a problematic website that comes up in response to an innocuous search on a browser. The circumstantial evidence could properly support a reasonable inference that for each count for which Arenas was convicted, he deliberately viewed photographs depicting an actual sexual performance by a minor person because the primary focus of those websites was child pornography.

Specifically, the relevant evidence from which the inferences may be drawn is uncontested. Arenas performed internet searches with terms designed to find child pornography. Arenas visited websites whose titles and URLs were synonymous with child pornography. Arenas's explicit search terms and the titles of websites he clicked on showed that he actively, voluntarily and intentionally sought to view child pornography. Arenas's counsel also admitted Arenas sought child pornography.

Arenas's girlfriend testified that when she clicked on the links on Arenas's phone on the same evening that Arenas was viewing such websites, she found child pornography. She testified she saw prepubescent females clothed in lingerie, some of whose genitals were visible. Detective Fain testified he viewed

child pornography when he subsequently clicked on those same links as listed in Arenas's internet search history at a later date and the jury was presented with printouts which showed the content Detective Fain found.

Additionally, the jury received screenshots of the text exchanges between Arenas and his girlfriend. When Arenas's girlfriend explicitly accused him of looking at child pornography, Arenas did not remain silent. Instead, he explained that he knew what he did was wrong and disgusting. The clear implication was that by failing to deny her accusation which was not open to any ambiguity, he acknowledged it as true. Pursuant to Kentucky Rules of Evidence (KRE) 801A(b)(2), by failing to deny the accusation that he viewed child pornography and instead trying to excuse his actions, Arenas (through an adopted admission) admitted to viewing child pornography. *See Ragland v. Commonwealth*, 476 S.W.3d 236, 250-52 (Ky. 2015).

The only remaining question is whether, given the format of multiple images of child pornography on each initial page of the websites Arenas had previously visited, a reasonable juror thus could infer that while the content on the those initial pages may have changed over time, each initial page of these websites contained at least one visual depiction of "an actual sexual performance by a minor person" when they were visited by Arenas. We believe based on the totality of the

evidence that the jury could reasonably infer that Arenas indeed found such material on those five websites.

"When all else is said and done, common sense must not be a stranger in the house of the law." *Cantrell v. Kentucky Unemployment Ins. Commission*, 450 S.W.2d 235, 237 (Ky. 1970). Common sense here permitted, but of course did not require, the jury to infer that the websites contained exactly what Arenas hoped they did when he searched for them and visited them, given that afterwards he admitted to viewing child pornography. He did not have to specifically admit that he saw child pornography on each of the five websites he visited (and where child pornography was later found) for the jury to convict him on these counts.

For the foregoing reasons, we affirm the judgment of the Kenton Circuit Court finding Daniel Arenas guilty of five counts of possession or viewing of matter portraying a sexual performance by a minor.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Roy Alyette Durham II
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General
Frankfort, Kentucky