RENDERED: FEBRUARY 19, 2015
TO BE PUBLISHED

# Supreme Court of Kentucky

### 2014-SC-000073-MR

WILLIAM SMITH                                                      APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.        HONORABLE CHARLES LOUIS CUNNINGHAM, JR., JUDGE
NO. 11-CR-002547-02

COMMONWEALTH OF KENTUCKY                                    APPELLEE

**OPINION OF THE COURT BY JUSTICE CUNNINGHAM**

**<u>AFFIRMING</u>**

On the evening of August 14, 2011, Appellant, William B. Smith III, and

Quentin L. Wilson fired a barrage of gunshots into a crowd of people gathered

at Shawnee Park in Louisville. Antonio Lamont Anderson died as a result and

two others were seriously injured. Several vehicles were also damaged by the

shooting. A bullet lodged in the trunk of one nearby vehicle, narrowly missing

Mr. Anderson's four-year-old daughter who was asleep in the backseat.

Anderson's pregnant fiancée was also in the car.

Louisville Metro Police Officer Chad Johnson was present during the

shooting. Officer Johnson testified that after hearing gunshots, he witnessed

Wilson standing with his arm outstretched, firing a handgun into the crowd.

Johnson also testified that he saw several other muzzle flashes near Wilson.

Wilson, Smith, and another individual involved in the shooting fled the scene

on foot and Officer Johnson followed. They were eventually apprehended and

arrested. Police officers re-traced the path along which Smith and his confederates fled and discovered four handguns, three of which were found together underneath a broken tree branch. A ballistics expert determined that several of the projectiles and casings recovered from the crime scene were fired from the recovered handguns.

Smith and Wilson were indicted and jointly tried. The other individual involved in the shooting was a juvenile. A Jefferson Circuit Court jury convicted Smith of complicity to murder, two counts of criminal attempt to commit murder, two counts of first-degree wanton endangerment, and one count of tampering with physical evidence.

The jury recommended a sentence of 20 years' imprisonment for the murder conviction, 10 years for each attempted murder conviction, four years for each wanton endangerment count, and three years for the tampering conviction. The jury further recommended that the murder and attempted murder sentences run concurrently with each other and that the wanton endangerment and tampering sentences also run concurrently with each other. These two sets of sentences were to be served consecutively for a total sentence of 24 years' imprisonment. The trial court sentenced Smith in accord with the jury's recommendation. Smith now appeals his judgment and sentence as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution. Two issues are raised and addressed as follows.

## Gang Expert Testimony

Smith argues that the trial court committed reversible error when it admitted the testimony of Louisville Metro Detective Gary Huffman. Although Smith asserts that this was improper expert testimony, his primary contention is that the detective's testimony was irrelevant and unduly prejudicial.

At trial, Detective Huffman provided information concerning the general nature of gang operations and networks throughout the country. Huffman also identified and discussed local gangs operating in the Louisville Metro area including Cecil N Greenwood ("CNG") and Victory Park. According to Huffman, the two are rivals. The former is a local sub-set of the infamous "Bloods," while the latter is a sub-set of the equally infamous "Cripps." The detective also testified that the two gangs are known by alternate names, but are commonly identified as CNG and Victory Park respectively.

Detective Huffman identified Smith as being present in multiple photographs introduced as exhibits for the Commonwealth. Based on these photos, he testified that the color of Smith's clothing was identified with CNG. In at least one photo, Smith was wearing a white t-shirt imprinted with the letters CNG in red. Huffman further acknowledged that the photos identified other individuals known to have been affiliated with CNG, and that they and Smith were demonstrating hand signs that denoted CNG affiliation.

Detective Huffman also discussed one of Wilson's tattoos that referenced Darryl Head, a slain member of CNG. Huffman opined that ever since Mr. Head was killed by Victory Park affiliates several years earlier, there had been

ongoing retaliatory issues between the two gangs. He further testified that victims of the shooting of August 14, Norman Bradley Williams and Lewis Jones, were suspected members of Victory Park. Huffman concluded that the potential motive for the shootings in the present case may have been gang related.

## KRE 702

KRE 702 permits opinion testimony of "a witness qualified as an expert by knowledge, skill, experience, training, or education[,]" if that testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." We review a trial court's determination whether a witness is qualified to give expert testimony for an abuse of discretion. *Brown v. Commonwealth,* 416 S.W.3d 302, 309 (Ky. 2013). In the present case, the trial court permitted Detective Huffman to testify as a gang expert after engaging in two *Daubert* style hearings on the issue. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

Although Smith broadly asserts that the introduction of Detective Huffman's testimony was improper expert evidence, he does not contest Huffman's qualifications. It is clear that Detective Huffman possessed the requisite knowledge and experience in the area of gangs and gang related activity to qualify him as an expert. Huffman had been a law enforcement officer for 15 years. His tenure with the Louisville Metro Police Department ("LMPD") involved extensive experience with gangs, including his former position as LMPD's Gang Coordinator. *See, e.g., State v. Torrez,* 210 P.3d 228,

4

234-36 (N.M. 2009) (holding that detective was qualified to testify as expert on the subjects of gangs); *People v. Bynum*, 852 N.W.2d 570, 630 (Mich. 2014).

Furthermore, Smith offers no specific evidence impugning the reliability of Huffman's testimony. *See United States v. Hankey*, 203 F.3d 1160, 1168-70 (9th Cir. 2000) (noting that peer review, publication, and potential error rate, "are not applicable to this kind of testimony whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it"). As previously noted, Detective Huffman's knowledge and experience in this field are unquestioned. Accordingly, the trial court did not abuse its discretion in allowing Huffman to testify as an expert on gangs and gang related activities.

### KRE 401 and 402

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. This test requires "only a slight increase in probability . . . ." *Harris v. Commonwealth*, 134 S.W.3d 603, 607 (Ky. 2004). A trial court's determination with respect to relevancy of evidence is reviewed under an abuse of discretion standard. *Love v. Commonwealth*, 55 S.W.3d 816, 822 (Ky. 2001).

In its order denying Smith's motion *in limine*, the trial court held as follows:

> [T]he proposed testimony relating to the victim's gang affiliation
> and the existence of ill-will between the two subject gangs as a
> result of an earlier killing would be helpful to the jurors weighing

5

the evidence. The Commonwealth has presented a compelling argument regarding their need to present this evidence to show potential motive for shootings which otherwise would seem completely random.

We agree that Detective Huffman's testimony assisted the jury in understanding the circumstances surrounding the murder and offered a possible motive for what would otherwise appear to be an inexplicable massacre. Although motive was not a necessary element of proof, murder is "not a crime in which motive is no consequence." *Rackley v. Commonwealth*, 674 S.W.2d 512, 514 (Ky. 1984) *overruled on other grounds by Bedell v. Commonwealth*, 870 S.W.2d 779 (Ky. 1993). The following evidence introduced at trial further demonstrates the relevance and probative value of Detective Huffman's testimony.

Officer Johnson provided detailed testimony that he observed a group of individuals at Shawnee Park travelling together and whom he recognized as having been from the neighborhood surrounding Cecil and Greenwood streets in Louisville. He specifically identified Wilson as being amongst the suspect troop. This initial identification was based on Officer Johnson's previous encounters with Wilson in the Cecil and Greenwood neighborhood. Johnson later observed Wilson firing into the crowd of individuals. Officer Johnson also testified that he recognized Smith from his previous experiences working in the Cecil and Greenwood neighborhood. However, Johnson did not identify Smith until after he was apprehended and arrested.

Evidence was also introduced that some of the victims were reluctant to speak with the police following the shooting due to the possibility of being

identified as a "snitch." Norman Bradley Williams was one of the victims who testified at trial. He identified Smith and Wilson as the shooters and stated that he did not originally want to speak with the police because he would be labeled a snitch. Williams admitted to being a member of the Victory "brotherhood" and that he believed that he was the true target of the shooting. Williams also testified that he believed the shooting was motivated by what happened "on the streets."

Our leading case on the admissibility of gang expert testimony is *Hudson v. Commonwealth*, 385 S.W.3d 411 (Ky. 2012). In that case, Hudson and two accomplices, all of whom were members of the same gang, murdered Shyara Olavarria as retribution for her snitching to the police. *Id.* at 413-414. Evidence was introduced that Hudson's accomplices also murdered a member of a rival gang shortly after Olavarria's murder. Both murders occurred on the same day and involved the same murder weapon. *Id.* We held that "[t]he evidence of gang activity was relevant to explain the context of and motive for Olavarria's murder [and was] highly probative of motive and intent." *Id.* at 419.

*Hudson* also involved the contested testimony of a police officer who testified as an expert in gangs and gang activity. *Id.* The officer specifically explained the meaning of various gang terms such as "snitching." *Id.* at 419-20. We held that the officer's testimony was relevant because it provided general and specific information concerning gang terminology. *Id.* Similar to *Hudson*, Detective Huffman's testimony in the present case was relevant and probative in providing: 1) a general context for the shooting and surrounding

7

circumstances; 2) a context for witness testimony and Williams' testimony in particular; and 3) a possible motive for the crimes. *See, e.g., State v. Torres*, 874 A.2d 1084, 1093-95 (N.J. 2005) (listing cases admitting expert testimony on gang issues to prove the defendants' motive).

### KRE 403

Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of undue prejudice . . . ." KRE 403. "[A]ll evidence demonstrating that a defendant is guilty beyond a reasonable doubt prejudices the defendant. KRE 403 requires something more." *Mayse v. Commonwealth*, 422 S.W.3d 223, 228 (Ky. 2013).

In the present case, the prejudice was minimal. Detective Huffman's testimony did not discuss any specific criminal activity of CNG or maintain that Smith was involved in any crimes or prior bad acts, including any specific acts affiliated with CNG. Detective Huffman was expressly precluded by the trial court from commenting about the possession of handguns by gang members. Huffman's testimony, like that in *Hudson*, was neither inflammatory nor excessive. *Hudson*, 385 S.W.3d at 419-20. Accordingly, the probative value of Detective Huffman's testimony was not substantially outweighed by the danger of undue prejudice. The trial court did not abuse its discretion in admitting that testimony.

### Sentencing

Smith further alleges that the jury was improperly instructed on the law governing the case. He specifically argues that the trial court failed to comply

8

with the "Truth in Sentencing" statute and also failed to inform the jury that its sentence for murder could not be altered by the judge. Smith requests palpable error review.

### Post-incarceration Supervision

Pursuant to KRS 532.055(2)(a), the Commonwealth introduced testimony concerning sentencing ranges, parole eligibility and sentencing credits. The Commonwealth's witness did not inform the jury that KRS 532.400 imposes a one year term of post-conviction supervision for persons convicted of a capital offense. However, KRS 532.055(2)(a) does not require that the Commonwealth do so; rather, it provides evidence that "*may* be offered by the Commonwealth." (Emphasis added). There was no error here. Also, to the extent that Smith's argument is interpreted as a failure to *instruct* the jury on post-conviction supervision, appellate review is barred due to improper preservation. *See* RCr 9.54(2); *Martin v. Commonwealth*, 409 S.W.3d 340, 346-47 (Ky. 2013).

### Judicial Modification

Smith contends that trial judges have no statutory authority to modify sentences in non-aggravated capital cases, and that it was error not to "advise" the jury that its sentence for murder could not be altered by the judge. However, he fails to assert the appropriate manner in which the court should have "advised" the jury. If we interpret Smith's argument as a failure to *instruct* the jury, our review is barred due to improper preservation. *See* RCr 9.54(2); *Martin*, 409 S.W.3d at 346-47. In any event, Smith's argument is misguided.

9

KRS 532.070 provides in part that "[w]hen a sentence of imprisonment for a felony is fixed by a jury pursuant to KRS 532.060 . . . the court may modify that sentence and fix a maximum term within the limits provided in KRS 532.060 . . . ." KRS 532.060 governs sentencing in felony cases where the death penalty is not authorized. In contrast, KRS 532.025 governs sentencing in capital cases where the death penalty is authorized. All murders are classified as capital offenses. KRS 507.020(2). Furthermore, "[s]ubsection 3 provides that at least one statutory aggravator must be established beyond a reasonable doubt before the death penalty may be imposed." *Dunlap v. Commonwealth* 435 S.W.3d 537, 566 (Ky. 2013) (citing KRS 532.025(3)). The death penalty was not authorized in the present case because there were no aggravating factors.

Smith contends that a person convicted of a non-aggravated capital offense cannot be sentenced under either KRS 532.025 or KRS 532.060 and, therefore, cannot have his sentence "fixed" or "modified" by the trial judge pursuant to KRS 532.025(1)(b) or KRS 532.070. Indeed, there is no specific statute governing sentencing for non-aggravated capital offenses. However, KRS 532.010 classifies capital offenses as felonies for sentencing purposes. Accordingly, sentencing in non-aggravated capital cases is governed in part by KRS 532.060 and is, therefore, subject to modification by the trial court pursuant to KRS 532.070. An instruction that the sentence could not be modified by the judge would have been incorrect. There was no error here.

10

## Conclusion

For the foregoing reasons, the judgment of the Jefferson Circuit Court is hereby affirmed.

Minton, C.J.; Abramson, Cunningham, Keller, Noble, and Venters, JJ., sitting. All concur, except Noble, J., concurs in result only.

COUNSEL FOR APPELLANT:

Annie O'Connell
O'Connell Law Office

COUNSEL FOR APPELLEE

Jack Conway
Attorney General of Kentucky

Dorislee J. Gilbert
Special Assistant Attorney General

11